UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>               Plaintiff,<br><br>    v.<br><br>CORNELL HAYNES JR. (aka "Nelly"), an individual; SHANTEL CHRISTINE JACKSON, an individual,<br><br>               Defendants. | No.<br><br>COMPLAINT FOR SEXUAL ASSAULT DAMAGES AND DEFAMATION<br><br>**JURY TRIAL DEMANDED** |

Plaintiff alleges:

## I.       Parties

1.1    Plaintiff Jane Doe is a citizen and resident of Essex, England.

1.2    Plaintiff Jane Doe wishes to remain anonymous in these proceedings with her name redacted from the public record.

1.3    Defendant Cornell Hanes Jr. (aka "Nelly"), is a professional entertainer, who resides in St. Louis, Missouri, who at the time of the incident was touring on a bus in the United Kingdom.

1.4    Defendant Shantel Christine Jackson ("Ms. Jackson") was at all material times the girlfriend of Defendant Nelly, and a citizen and resident of Los Angeles, California.

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 1

## II.        Jurisdiction and Venue

2.1     The United States District Court Eastern District of Missouri, Eastern Division, has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).  Plaintiff Jane Doe is a citizen of a foreign state  and the amount in controversy exceeds $75,000.

2.2     Venue is proper in and for the Eastern District of Missouri, Eastern Division, because the tortious acts resulted from the actions of Defendant Cornell Hayes Jr., a citizen of the St. Louis, Missouri.  28 U.S.C. § 1391(b)(1).

### III.        Facts

3.1 Jane Doe is a mother of three who is in a long term committed relationship.   On December 5, 2017, she went with her girlfriends to watch Defendant Nelly perform at Cliffs Pavilion in Essex, England.  After the show, for 50 pounds fans could take a photo with Defendant Nelly.  Jane Doe and her friends decided a photo would be worthwhile and stood in line excited to meet the performer.

3.2 When it was Jane Doe's turn, Defendant Nelly placed his arm tightly around her and hugged her close.  He whispered in her ear that he wanted her to stay behind so he could talk to her. Jane Doe 2 laughed and started walking away but her girlfriends said they couldn't believe their luck and wanted to wait.  Jane Doe thought maybe her friends had arranged something special for her as it was her birthday outing.

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 2



3.3     When all the fans had left, Defendant Nelly told Jane Doe to come with him to his

dressing room so they could talk.  She followed him as did her girlfriends until his guard put

his arm out and told the friends they could not follow.  When the women disagreed,

Defendant Nelly allowed everyone up to the dressing room.

3.4     Defendant Nelly then asked Jane Doe to come to the room next door.  The room was

small and contained a shower.  After a brief moment of exchanging pleasantries, Jane Doe

said she wanted to check on her friends and left.  Defendant Nelly followed.  Everyone was

smiling, laughing and having a nice time.  Defendant Nelly told Jane Doe that he had an

after party to go to in Nottingham and that she could come on his tour bus with him.  She

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 3

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

declined.   He asked if he could talk to her again in the other room.    Jane Doe followed Nelly.

3.5     This time Defendant Nelly closed the door, stood in front of it, and dropped his trousers. Jane Doe told him to pull his trousers up.  Defendant Nelly started masturbating and said, "you want this dick don't you."  He told her that she wanted him, that every woman wanted him.  She made light of the situation and told him that he picked the wrong woman. Defendant Nelly kept repeating "no no no, come on you know you want it."  Defendant Nelly put his hands down Jane Doe's top and tried to pull it off.  This was without her consent.

3.6     Jane Doe tried to diffuse the situation.  She tried to back away as best as she could.  She explained that she had a spouse and children.  Defendant Nelly told her that didn't matter. Jane Doe told him to pull his trousers up and they could forget this ever happened. Defendant Nelly told her that no one talked to him like that, she intrigued him, and he had never met anyone like her.  He then pulled his trousers up and began walking towards her.

3.7 Jane Doe is 4'11 and petite.  As he approached her she tried to move back but there was nowhere she could go.  He dropped his trousers and said he really wanted her.  Defendant Nelly began to masturbate again.  He told her she wanted him.  Jane Doe repeated that she did not.  Defendant Nelly tried to kiss Jane Doe - two times.  He said he wanted "to come in your mouth and all over you."  Jane Doe continued to evade and refuse him.

3.8 Defendant Nelly then grabbed Jane Doe's hand and placed it on his penis.  She pulled her hand away and told him generally the following:    That's enough.  Who the f*ck do you think you are.  Look mate I had a really nice time at the concert.  You may have sold records and have a more quid in your bank than I do.  But this doesn't make you any more special than me.  Pull your trousers up back up and f*ck off.

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 4

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

3.9 Suddenly Defendant Nelly clenched his fist and his whole demeanor completely changed. He got a look on his face that scared Jane Doe.  She looked around and didn't know how to get out of the room.  She said, "are you going to hit me?"  He responded, "no I'm just frustrated, I'm not used to not getting my way, just do it."

3.10    And then Defendant Nelly put his right hand on the back of her head and his left hand on her shoulder and forced her head down pushing his erect penis into her mouth.   This constituted sexual assault.  Jane Doe was in utter shock.  Once he thought he had her in position, Defendant Nelly released her shoulder. Jane Doe jumped back, twisted and fell backwards into the shower curtain.  She was able to scramble out of the room.

3.11    Jane Doe entered the adjacent dressing room where her friends were talking to Nelly's security.  She was unable to speak but tried to signal with her eyes that they needed to leave.

3.12    As Jane Doe and her friends were leaving, Defendant Nelly physically reached out and pulled Jane Doe back while she was on the stairway.  He told her in a threatening manner, "I will find you."

3.13    Jane Doe felt that if her friends had not been right next door the sexual assault would have progressed further.  She considered going to the police but felt that she would not be believed.

3.14    On December 18, 2017, in the lawsuit of Greene v. Nelly, King County Superior court Cause No. 17-2-32623 KNT Jane Doe and a second Jane Doe identified themselves as additional sexual assault victims of Defendant Nelly.

3.15    On January 26, 2018, Shantel Jackson, Defendant Nelly's girlfriend, took to twitter and posted a message calling Jane Doe a liar, claiming that no sexual assault occurred, and asserting that Jane Doe was making it harder for real survivors.

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 5





**missjackson** ✔
1.1m followers

View Profile

Look ... I know he fucked up and we're dealing with that in our relationship to rebuild it and find trust . Having to go through all of this publicly is the worst feeling ever. But this should not open the door for false claims. Those dates these Jane Doe's are claiming, I was at those venues, in the dressing rooms, and on that tour bus. There are women dealing with real issues of sexual assault and for the first time people are listening and there is a chance for real change. But all of this work is discredited and makes things harder for the survivors when people lie.

View More on Instagram

33,326 likes · 2,162 comments
missjackson Enough is Enough

7 MONTHS AGO

3.16    On January 27, Defendant Nelly's lawyer gave a television interview, and in furtherance

of fostering the defamation set forth in 3.17, stated on his client's behalf:

His girlfriend was with him the entire time during this meet and greet which would factually

make these allegations impossible."

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

https://www.youtube.com/watch?v=1ZtgjCqMlZs

3.17    These defamatory allegations were posted on social media and published not only by

Jane Doe but her friends, and the investigating law enforcement officers in Essex who

already were aware that she was the person referred to by Defendants as set forth in the two

preceding paragraphs.

3.18    As a proximate result of the above actions, Jane Doe suffered personal injuries including

but not limited to post traumatic stress disorder, shame, humiliation, and other injuries which

have resulted in her physicians prescribing medication and entering orders that she is not

currently able to resume her job.

## IV.        Evidence of other acts of sexual assault

4.1.1   Defendant Nelly had a scheme or plan not only with respect to Jane Doe, but other

women who attended his performances.  He also has a distinctive and unusual modus

operandi.

4.1.2   During his performances he would search out a physically beautiful woman in the

audience.  He would also search out such a woman in the social setting of the venue that

he was performing in.

4.1.3   The women usually appear to be of color, with beautiful faces and curvy figures.

4.1.4   A member of his entourage would invite the woman (along with her friends) to his VIP

section after the performance.  Nelly would then socialize in a benign manner.

Sometimes he would offer the woman transportation so she could attend an after party

with him.  Eventually he would separate the woman from her friends.

4.1.5   He appears to have been particularly attracted to women who were resistant.

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 7

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

4.1.6   Nelly would then masturbate in front of the women with the expectation that presenting himself would entitle him to sexual gratification, and that the women were drawn to and could not resist his penis.

4.1.7   When a woman resisted, he would then sexually accost and/or assault her.

4.1.8   Nelly would express a desire to, or actually, ejaculate "all over" or upon multiple parts of the woman's body.

4.1.9   This pattern of conduct before the incident with Jane Doe demonstrates that Defendant Nelly preyed upon his selected female fans in order to engage in sexual assault, and is admissible under Rule 404(b).

4.1.10  Attached as Exhibit A is a true and correct copy of the Amended Complaint filed in King County Superior Court Cause No. 17-2-32623 KNT which allegations provide the background details of two prior victims.

## V.  Liability

5.1   Defendant Nelly sexually assaulted Jane Doe.  He intentionally engaged in harmful and offensive physical contact with Jane Doe, causing injury to her, which constitutes the tort of battery.

5.2   Defendant Nelly intentionally caused Jane Doe apprehension of imminent harmful and offensive contact, which constitutes the tort of assault.

5.3   Defendant Nelly's actions as described above were intentionally committed.

5.4   Defendant Nelly's actions were extreme and outrageous, constituted intentional or reckless infliction of emotional distress, and resulted in severe emotional distress to Jane Doe, which constitutes the tort of outrage.

5.5   Defendant Shantel Jackson published a tweet stating that Jane Doe was a liar and was not

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 8

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

sexually assaulted.  This defamatory position was then used by Defendant through his lawyer in additional media broadcast even though Defendant knew or should have known it was false.  The publication was defamatory in that it exposed Jane Doe to contempt and ridicule, and as a result Jane Doe's reputation was damaged since publication occurred to those who knew her identity including but not limited to her friends and law enforcement involved in investigation of the incident.

5.6    Defendant Nelly's actions against Jane Doe are not an isolated incident and are part of his common scheme or plan, and a distinctive modus operandi, to use his status as a celebrity musical performer to sexually assault selected women who attend his concerts.

## VI.     Damages

6.1    As a direct and proximate result of the above acts, omissions, and other conduct of Defendant Nelly, Jane Doe has suffered and continues to suffer personal damage, PTSD, emotional trauma, humiliation, loss of reputation, loss of enjoyment of life, and other general damages in amounts to be proven at the time of trial.

6.2    As a direct and proximate result of the above acts, omissions, and other conduct of Defendants, Jane Doe has been required to seek various medical treatments and has lost wages in amounts to be proven at the time of trial.

## VII.     Prayer for Relief

WHEREFORE, Plaintiff prays for judgment and relief against Defendant Cornell Haynes Jr. (Nelly) and Defendant Shantel Jackson jointly and severally as follows:

1.   For general and special damages in an amount to be determined at or before trial;

2.   For costs and disbursements;

3.   For statutory attorney fees;

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 9

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

4.  If Defendant brings any frivolous or unfounded defenses, for attorneys' fees and costs pursuant Rule 11 of the Federal Rules of Civil Procedure;

5.  For a jury trial; and,

6.  For such other and further relief as the Court may deem just and equitable.

DATED this 14th day of November, 2018.


STRITMATTER KESSLER
KOEHLER MOORE


/s/ Karen K. Koehler
Karen K. Koehler, FBA #15325WA
Counsel for Plaintiff

COMPLAINT FOR SEXUAL ASSAULT DAMAGES
AND DEFAMATION - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT A

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

MONIQUE GREENE,

                              Plaintiff,

        v.

CORNELL HAYNES JR. (aka "Nelly"),

                              Defendant.

No. 17-2-32623-2 KNT

FIRST AMENDED COMPLAINT FOR SEXUAL ASSAULT AND DEFAMATION

Plaintiff alleges:

## I.        Parties

1.1     Plaintiff Monique Greene, is now a 22 year old University of Washington college student, who resides in Seattle, King County, Washington.

1.2     Defendant Cornell Hanes Jr (aka "Nelly"), is now a 43 year old professional entertainer, who resides in St. Louis, Missouri, and who on occasion tours on a bus throughout the United States, including the State of Washington.

## II.        Jurisdiction and Venue

2.1     The Superior Court of King County, State of Washington, has subject matter jurisdiction over this action pursuant to RCW 2.08.010.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 1

2.2    Jurisdiction and venue are proper in and the Superior Court of Washington King County Kent Division because the tortious acts described herein occurred and resulted in injury in Auburn, King County, Washington.  RCW 4.28.185; RCW 4.12.020.

### III.    Facts

3.1 On Friday, October 6, 2017, Defendant Nelly was performing his act at Aston Manor, a dance and nightclub bar located in Seattle, Washington.



3.2  In between sets, he stayed in a roped off section on the premises.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 2

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777



3.3 Defendant Nelly was travelling with his entourage, some of whom were at Aston Manor and

others who were on a tour bus located in the parking lot of Walmart in Auburn, Washington.

The group was planning to travel to Ridgefield, Washington to perform on Saturday night,

October 7, 2017.

3.4 Ms. Greene was a 21 year old senior at the University of Washington.



FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 3

3.5 Ms. Greene worked in addition to going to school full time.  One such job had been working at Aston Manor as a host.  On the night of October 6, she was not working.  She decided to meet up with friends at Aston Manor.



3.6 At one point in the evening, a member of Defendant Nelly's entourage asked her to join the performer in his section of the club.  Ms. Greene and her girlfriend joined the Defendant along with the others who were with him.

3.7 Ms. Greene had been drinking alcohol and was given more when she was in Defendant Nelly's section.  She was under the influence of alcohol.

3.8 Defendant Nelly invited Ms. Greene and her friend to go to an after-party and they agreed.

3.9 Defendant Nelly told Ms. Greene that she should not drive because she had been drinking and said that his vehicle would take them.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 4

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

3.10    Defendant Nelly, his entourage, Ms. Greene and her friend occupied three black SUV vehicles which drove together to the destination.  Defendant Nelly rode with Ms. Greene and her friend.

3.11    Ms. Greene and her friend did not realize that the after-party would be occurring on a tour bus parked in a Walmart shopping center at 762 Outlet Collection Way SW in Auburn.  Upon reaching the destination at about 2:30 a.m., the friend declined to stay and was taken away by one of the SUVs.



3.12    Ms. Greene went onto the tour bus with Defendant Nelly.  There were numerous other people on the bus including women and so though the location was odd, she did not feel unsafe.

3.13    Defendant Nelly took her to the rear of the bus which was his bedroom.  The door to the room was open and Ms. Greene took a seat on the bed as there was nowhere else to sit.

3.14    Defendant Nelly then began masturbating, closed the door, and sexually assaulted Ms. Greene against her will and after Ms. Greene refused to consent.  This included oral sex and penetrating her with his penis.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 5

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

3.15    Ms. Greene tried to dissuade Defendant Nelly from proceeding with the assault by stating that he couldn't have intercourse with her without a condom.  She also told him no again. These repeated statement did not dissuade Defendant Nelly.

3.16    After the assault, Ms. Greene went into the bathroom and when she exited, Defendant Nelly had resumed masturbating and wanted her to have sex with him again.

3.17    Before the assault had occurred, Defendant Nelly asked Ms. Greene to stay with him on the tour for the weekend.  When she told him that she had a job and was in school he offered to pay her $2,500.  Ms. Greene declined. During the assault and after, Defendant Nelly repeated this request and offered to pay Ms. Greene to stay with him through the weekend. Each time Ms. Greene declined.

3.18    Following the assault Ms. Greene was becoming increasingly upset and began yelling that she wanted off the bus.

3.19    Members of the entourage started yelling that Ms. Greene was a problem and needed to leave.  Ms. Greene was physically pushed out of the bus and Defendant Nelly threw a $100 bill at her then closed the bus door and said "bye bye."  He taunted her from the bus window as she stood alone in the Walmart parking lot.

3.20    Ms. Greene called an Uber which arrived at about 3:45 a.m..  The Uber did not leave the parking lot.  Instead Ms. Greene asked the driver to wait as she had called 911.

3.21    Ms. Greene was interviewed when the police arrived.  It was noted that she was consistent in her rendition of the details.  She agreed to cooperate by giving a recorded statement, signing a medical release form, and completing a rape kit at a medical facility.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 6

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

3.22    According to the officers, Ms. Greene appeared very afraid, distraught and upset.  She was sobbing heavily with tears running down her face.  Her hair was disheveled and she had been shivering.

3.23    Ms. Greene was transported by the police to Multicare Auburn Medical Center for medical evaluation.



3.24    The police believed there was probable cause to arrest Defendant for RCW 9A.44.050 Rape 2nd Degree.

3.25    Defendant Nelly emerged from the bus, was placed under arrest for rape, and given a Miranda warning.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 7

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777



3.26    The police could smell the odor of intoxicants coming from his person as he spoke.

3.27    The police found it difficult to have a conversation with Defendant Nelly as he became

repetitive in explaining the group's trip to his tour bus and Ms. Greene's subsequent

departure.  The police believed Defendant Nelly was being vague about what occurred

between the time of arriving at his bus, and Ms. Greene departing.  The police attempted to

interrupt Defendant Nelly multiple times, and eventually believed it was necessary to ask

more specific questions.

3.28    The police asked Defendant Nelly if he and Ms. Greene had sex, and he responded yes.

The police asked if Defendant Nelly believed their encounter was consensual and he said that

it was.  The police asked Defendant Nelly if he used a condom during intercourse, and he

said he had not.

3.29    The police attempted to identify and speak to Defendant Nelly's entourage who were on

the bus, but they were not willing to identify themselves.  One of the security members stated

that no one was going to speak to the police regarding the investigation, answer any

questions, provide at statement, or identify themselves.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 8

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

3.30    At 6:05 in the morning, the police noted that Ms. Greene was still at the medical facility. She was curled in the fetal position on the hospital bed, lying on her side, with a blanket covering her entire person.  Ms. Greene could be heard quietly crying from under the blanket.

3.31    The police requested that Ms. Greene provide a recorded statement.  She began crying and breathing heavier.  She exposed her face from under the blanket to grab a tissue and there were obvious tears coming from her eyes, and thick mucus running from her nose.  Ms. Greene began repetitively saying, "please let me go home – please let me go home – please let me go home."

3.32    As a proximate result of the sexual assault, Ms. Greene suffered damages including but not limited to physical and mental health injury.

3.33    On her way home from the hospital the morning of October 7, 2017, Ms. Greene was contacted by people from Aston Manor who had seen the news reports, knew that she had left the premises with Defendant Nelly, and presumed she was the victim.

3.34    On October 7, 2017, Defendant Nelly through his attorney issued a press release that stated:

"Nelly is the victim of a completely fabricated allegation.  Our initial investigation, clearly establishes the allegation is devoid of credibility and is motivated by greed and vindictiveness.  I am confident, once the scurrilous accusation is thoroughly investigated, there will be no charges.  Nelly is prepared to pursue all legal avenues to redress any damage caused by this clearly false allegation."

3.35    Also on October 7, 2017, Defendant Nelly issued the following statement on Twitter:

"Let me say that I am beyond shocked that I have been targeted with this false allegation.  I am completely innocent.  I am confident that once the facts are looked at, it will be very clear that I am the victim of a false allegation.  I also want to thank my fans for their unwavering support.  They know me.  I assure you I will be vindicated.  And I assure you, I will pursue every legal option to address this defaming claim."

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 9

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

3.36    On October 8, 2017, a reporter from TMZ entertainment news called Ms. Greene on her cell phone and began to ask if she was okay.  Ms. Greene had not solicited the media and was still in shock.

3.37    On October 8, 2017, Defendant Nelly through his attorney told TMZ:

"It does not surprise me that she wanted to have her story publicized.  That is playbook 101 of a person with an agenda and clearly she has one.  The agenda is money, fame and notoriety…[W]e will be able to show by objective evidence and unbiased witnesses that she has zero credibility…She's a person who is making a dangerous, fraudulent allegation to accomplish her own goals."

3.38    These statements made by and on behalf of Nelly constituted intimidation of a witness under 9A.72.110 and 9A.04.110.

3.39    On October 9, 2017, Ms. Greene provided a recorded interview to police and the King County Prosecuting Attorney's office.  During that interview, the investigating officer promised Ms. Greene that the investigation would be closed and confidential until completed. No one would even know that she had given a statement.

3.40    On October 10, 2017, the commander of the police department issued a statement to media advising that Ms. Greene had met with the police and prosecutor the day before.

3.41    The police later apologized for breaking their promise of confidentiality to Ms. Greene.

3.42    From the time the press initially reported the sexual assault, and fed by Defendant Nelly's false denials, claims, and bullying, Ms. Greene became the subject of horrific online attacks.

3.43    Though Ms. Greene's name was not used by Defendant Nelly or his agents, multiple people at Aston Manor had seen her leaving with Defendant and knew that she was the woman whom he was publicly attacking through the internet and media.

3.44    On October 13, 2017, Ms. Greene informed the Auburn Police Department and King County Prosecutor's Office that she wanted to put a halt to the criminal investigation and

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 10

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

would not testify further.  She felt that she could not stand up against a celebrity and that the criminal system would fail her.

3.45    On October 15, 2017, after Nelly and his agents had engaged in the above conduct, actress Alyssa Milano posted the #Metoo tweet for the first time and brought momentum to the anti-sexual assault movement.

3.46    On December 13, 2017, the King County Prosecuting Attorney's Office issued a statement:

> "Police responded to and investigated a sexual assault allegation involving Mr. Haynes.  However, within days of her initial report to police, the complainant, through her attorney, informed investigators from the Auburn police department that she did not wish to assist in prosecution or the investigation of Mr. Haynes. While we have reviewed the existing investigative material, without the assistance of the complainant, this office is unable to proceed or fully assess the merits of the case.  "

3.47    On December 15, 2017, Defendant Nelly and his lawyer issued a press release:

> "The formal close of the investigation into the false allegations made against Nelly is of course welcome - however expected. We were confident, that what our investigation revealed from the outset of this allegation would ultimately be clear and Nelly would be vindicated. A thorough investigation did show Nelly was a victim of deceitful allegation devoid of credibility. Credible evidence did show this accuser to be deceptive. We have been in constant communication with the King County authorities and welcomed and appreciated the diligence in which the authorities proceeded. Leaving no stone unturned. Nelly recognizes the need for women who are victims of sexual assault of any kind to be heard and our existing systems changed. Nelly supports various women's advocacy groups that deal with Sexual Assault, and violence against women and is dedicated to raising awareness and furthering the conversation to about bring about necessary changes. However, this type of reckless false allegation cannot be tolerated as it is an affront to the real survivors of sexual assault. Nelly has suffered very real damage to his reputation. He has incurred economic loss and painfully has watched his family suffer. As a result Nelly is planning to proceed with litigation as the first step in restoring his reputation."

3.48    Defendant Nelly has sought to restore his reputation due to his arrest for sexually assaulting Ms. Greene by defaming her.

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

3.49    The press releases and twitter statements issued by Defendant Nelly and his agent were libelous, slanderous and defamatory.

3.50    These statements were not privileged.

3.51    These statements were issued with malice and clearly intended to expose Ms. Greene to hatred, contempt, and ridicule.

3.52    Defendant Nelly sexually assaulted Ms. Greene and all of his statements to the contrary are false.

3.53    As a proximate result of the above statements, Ms. Greene has suffered damages including but not limited to shame, mortification, and mental health injury.

## IV.    Evidence of other acts of sexual assault

4.1.1    Defendant Nelly had a scheme or plan not only with respect to Ms. Greene, but other women who attended his performances.  He also has a distinctive and unusual modus operandi.

4.1.2    During his performances he would search out a physically beautiful woman in the audience.  He would also search out such a woman in the social setting of the venue that he was performing in.

4.1.3    The women usually appear to be of color, with beautiful faces and curvy figures.

4.1.4    A member of his entourage would invite the woman (along with her friends) to his VIP section after the performance.  Nelly would then socialize in a benign manner. Sometimes he would offer the woman transportation so she could attend an after party with him.  Eventually he would separate the woman from her friends.

4.1.5    He appears to have been particularly attracted to women who were resistant.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 12

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

4.1.6   Nelly would then masturbate in front of the women with the expectation that presenting himself would entitle him to sexual gratification, and that the women were drawn to and could not resist his penis.

4.1.7   When a woman resisted, he would then sexually accost and/or assault her.

4.1.8   Nelly would express a desire to, or actually, ejaculate "all over" or upon multiple parts of the woman's body.

4.1.9   This pattern of conduct both before and after the incident with Ms. Greene demonstrates that Defendant Nelly preyed upon his selected female fans in order to engage in sexual assault, and is admissible under ER 404(b).

## V.       Jane Doe 1

5.1 Jane Doe 1 is a mother who is happily married.  She is a member of the U.S. Military who was stationed in the United Kingdom for three years.

5.2 On June 9, 2016, Jane Doe 1 and her girlfriend purchased VIP tickets to see Defendant Nelly in concert and have their photo taken with him.  After the concert Defendant Nelly's security invited Jane Doe 1 and her friend to come to a VIP area where Defendant Nelly was engaged with other fans.   Once they reached the area, Defendant Nelly stayed near them while greeting his fans.  Then because the room was crowded he suggested that they move back to another smaller VIP room, which they did.

5.3 Jane Doe 1, her friend, and Defendant Nelly had a very nice time spending about two hours together.  As the evening wore on Defendant Nelly invited Jane Doe and her friend to come with him to an after party.  He asked his security to locate a car to take them to the after party.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 13

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

5.4 Defendant Nelly was sitting on a desk/ledge looking down at Jane Doe 1, when he said, "let me see it."

5.5 Jane Doe 1 was shocked and asked "what?" She realized then that he expected to have sex with her. She was disappointed in him and disgusted. She said, "I thought we were too cool for this."



5.6 Defendant Nelly asked if she had "a boo" and she flashed her wedding ring at him. They had been talking about military life, family, and he already knew that she was married.

5.7 Defendant Nelly got off the table ledge and came close to her. He placed his hand on her leg, rubbed it and put his hand up her dress. This was done without Jane Doe 1's consent.

5.8 Defendant Nelly's actions constituted sexual assault.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 14

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

5.9 Jane Doe 1 had no intention of becoming a victim.  She was a well-trained member of the US military.  She firmly took Defendant Nelly's hand, removed it from under her skirt and pushed it back down to the side of his leg.

5.10    Defendant Nelly said, "hold on hold on it doesn't need to be like that."  He told her that he wanted her to come to the after party.  Because she would miss the last train back to Huntington, he offered to pay for the train fare back.

5.11    Jane Doe 1 tried to open the door to leave the room.  Defendant Nelly closed the door with his hand.  Jane Doe 1 tried to open the door again.  He closed it again.  At this point security came to the door and asked if everything was okay.

5.12    Jane Doe 1 and her friend left.  Though Defendant Nelly didn't get the chance to violate her further, his actions that night were reprehensible.

## VI.        Jane Doe 2

6.1 Jane Doe 2 is a mother of three who is in a long term committed relationship.   On December 5, 2017, she went with her girlfriends to watch Defendant Nelly perform at Cliffs Pavilion in Essex England.  After the show, for 50 pounds fans could take a photo with Defendant Nelly.  Jane Doe and her friends decided a photo would be worthwhile and stood in line excited to meet the performer.

6.2 When it was Jane Doe 2's turn, Defendant Nelly placed his arm tightly around her and hugged her close.  He whispered in her ear that he wanted her to stay behind so he could talk to her.  Jane Doe 2 laughed and started walking away but her girlfriends said they couldn't believe their luck and wanted to wait.  Jane Doe 2 thought maybe her friends had arranged something special for her as it was her birthday outing.

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 15

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777



6.3 When all the fans had left, Defendant Nelly told Jane Doe 2 to come with him to his dressing

room so they could talk.  She followed him as did her girlfriends until his guard put his arm

out and told the friends they could not follow.  When the women disagreed, Defendant Nelly

allowed everyone up to the dressing room.

6.4 Defendant Nelly then asked Jane Doe 2 to come to the room next door.  The room was small

and contained a shower.  After a brief moment of exchanging pleasantries, Jane Doe 2 said

she wanted to check on her friends and left.  Defendant Nelly followed.  Everyone was

smiling, laughing and having a nice time.   Defendant Nelly told Jane Doe 2 that he had an

after party to go to in Nottingham and that she could come on his tour bus with him.  She

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

1   declined.   He asked if he could talk to her again in the other room.    Jane Doe 2 followed

2   Nelly.

3   6.5 This time Defendant Nelly closed the door, stood in front of it, and dropped his trousers.

4   Jane Doe 2 told him to pull his trousers up.  Defendant Nelly started masturbating and said,

5   "you want this dick don't you."  He told her that she wanted him, that every woman wanted

6   him.  She made light of the situation and told him that he picked the wrong woman.

7   Defendant Nelly kept repeating "no no no, come on you know you want it."  Defendant Nelly

8   put his hands down Jane Doe 2's top and tried to pull it off.  This was without her consent.

9   6.6 Jane Doe tried to diffuse the situation.  She tried to back away as best as she could.  She

10   explained that she had a spouse and children.  Defendant Nelly told her that didn't matter.

11   Jane Doe 2 told him to pull his trousers up and they could forget this ever happened.

12   Defendant Nelly told her that no one talked to him like that, she intrigued him, and he had

13   never met anyone like her.  He then pulled his trousers up and began walking towards her.

14   6.7      Jane Doe 2 is 4'11 and petite.  As he approached her she tried to move back but there was

15   nowhere she could go.  He dropped his trousers and said he really wanted her.  Defendant

16   Nelly began to masturbate again.  He told her she wanted him.  Jane Doe 2 repeated that she

17   did not.  Defendant Nelly tried to kiss Jane Doe 2 - two times.  He said he wanted "to come

18   in your mouth and all over you."  Jane Doe 2 continued to evade and refuse him.

19   6.8 Defendant Nelly then grabbed Jane Doe 2's hand and placed it on his penis.  She pulled her

20   hand away and told him generally the following:    That's enough.  Who the fuck do you

21   think you are.  Look mate I had a really nice time at the concert.  You may have sold records

22   and have a more quid in your bank than I do.  But this doesn't make you any more special

23   than me.  Pull your trousers up back up and fuck off.

24
FIRST AMENDED COMPLAINT FOR SEXUAL          STRITMATTER KESSLER WHELAN
ASSAULT AND DEFAMATION - 17                              KOEHLER MOORE
                                                        3600 15th Ave West, Suite 300 | Seattle, WA  98119
                                                        Tel: 206-448-1777

6.9 Suddenly Defendant Nelly clenched his fist and his whole demeanor completely changed.  He got a look on his face that scared Jane Doe 2.  She looked around and didn't know how to get out of the room.  She said, "are you going to hit me?"  He responded, "no I'm  just frustrated, I'm not used to not getting my way, just do it."

6.10    And then Defendant Nelly put his right hand on the back of her head and his left hand on her shoulder and forced her head down pushing his erect penis into her mouth.   This constituted sexual assault.  Jane Doe 2 was in utter shock.  Once he thought he had her in position, Defendant Nelly released her shoulder. Jane Doe 2 jumped back, twisted and fell backwards into the shower curtain.  She was able to scramble out of the room.  As she exited Defendant Nelly yelled, "cunt!"

6.11    Jane Doe 2 entered the adjacent dressing room where her friends were talking  to Nelly's security.  She was unable to speak but tried to signal with her eyes that they needed to leave.

6.12    As Jane Doe 2 and her friends were leaving, Defendant Nelly physically reached out and pulled Jane Doe 2 back while she was on the stairway.  He told her in a threatening manner, "I will find you."

6.13    Jane Doe 2 felt that if her friends had not been right next door the sexual assault would have progressed further.  She considered going to the police but felt that she would not be believed.

## VII.        Liability

7.1    Defendant Nelly sexually assaulted Ms. Greene.  He intentionally engaged in harmful and offensive physical contact with Ms. Greene, causing injury to her, which constitutes the tort of battery

7.2    Defendant Nelly intentionally caused Ms. Greene apprehension of imminent harmful and

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 18

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

offensive contact, which constitutes the tort of assault.

7.3   Defendant Nelly intimidated Ms. Greene when she tried to pursue criminal action against him.

7.4   Defendant Nelly threatened Ms. Greene when she tried to pursue criminal action against him.

7.5   Defendant Nelly engaged in libel, slander and defamation of Ms. Greene.  Defendant published false statements of fact concerning Ms. Greene to others, which were defamatory and subjected her to hatred, contempt, ridicule and obloquy.  Defendant Nelly did so with malice and/or negligence, and his published statements were not privileged.

7.6   Defendant Nelly's published statements constitute defamation per se, and Ms. Greene is entitled to presumed damages.

7.7   Defendant Nelly published his defamatory statements regarding Ms. Greene as press releases or other public statements to be used by the media to spread his message.

7.8   Defendant Nelly's actions as described above were intentionally committed.

7.9   Defendant Nelly's actions were extreme and outrageous, constituted intentional or reckless infliction of emotional distress, and resulted in severe emotional distress to Ms. Greene, which constitutes the tort of outrage.

7.10  Defendant Nelly's actions against Ms. Greene are not an isolated incident and are part of his common scheme or plan, and a distinctive modus operandi, to use his status as a celebrity musical performer to sexually assault selected women who attend his concerts.

## VIII.      Damages

8.1   As a direct and proximate result of the above acts, omissions, and other conduct of Defendant Nelly, Ms. Greene has suffered and continues to suffer personal damage,

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 19

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

1   emotional trauma, humiliation, loss of reputation, loss of enjoyment of life, and other

2   general damages in amounts to be proven at the time of trial.

3   8.2     As a direct and proximate result of the above acts, omissions, and other conduct of

4   Defendants, Ms. Greene has been required to seek various medical treatments in amounts

5   to be proven at the time of trial.

6   8.3     As a direct and proximate result of the above acts, omissions, and other conduct of

7   Defendants, Ms. Greene has suffered loss of reputation and lost earning capacity in

8   amounts to be proven at the time of trial, including to wit:

9        a.   On about October 7, 2017, Shahin O.  the owner of Aston Manor placed a post on his

10           Facebook page that due to Defendant Nelly's quick release from jail, that the incident

11           involving Ms. Greene never occurred.  One month later, Ms. Greene was invited to

12           two birthday parties at Aston Manor – one of a Seahawk player and another friend.

13           When she arrived dressed up with the entire group, she was turned away from the

14           door by Aston Manor security and advised that she was barred from entering the club.

15       b.   Ms. Greene was working for Xtadium – a different club during the time period of the

16           incident.  Employees at Xtadium advised Ms. Greene that one of the brother owners

17           of the club (Amir Azer) was advising staff and others that she was the person

18           involved in the Nelly case and they did not want her at the club.  His brother Arash

19           Azer began to cut back Ms. Greene's hours, eventually barring her from working on

20           weekends and not allowing her to work on New Year's Eve.

21       c.   Ms. Greene was forced to drop all three of her fall quarter classes at the University of

22           Washington due to the aftermath of the trauma and then defamation.  She lost the

23           value of tuition and her graduation was pushed back one full quarter.

24

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 20

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777

### IX.        Prayer for Relief

WHEREFORE, Plaintiff prays for judgment and relief against Defendant Cornell Haynes Jr. (Nelly) as follows:

1. For an injunction against Defendant Nelly (and his penis) that prohibits him from engaging in sexual assault against female fans after concerts using the unique methods and plans described above;

2. For general and special damages in an amount to be determined at or before trial;

3. For costs and disbursements;

4. For statutory attorney fees;

5. If Defendant brings any frivolous or unfounded defenses, for attorneys' fees and costs pursuant to RCW 4.84.185 and/or Rule 11 of the Superior Court Civil Rules;

6. For such other and further relief as the Court may deem just and equitable.

DATED this 22nd day of January, 2018.


STRITMATTER KESSLER WHELAN
KOEHLER MOORE


/s/ Karen K. Koehler
Karen K. Koehler, WSBA#15325
Counsel for Plaintiff

FIRST AMENDED COMPLAINT FOR SEXUAL
ASSAULT AND DEFAMATION - 21

STRITMATTER KESSLER WHELAN
KOEHLER MOORE
3600 15th Ave West, Suite 300 | Seattle, WA  98119
Tel: 206-448-1777